## Williams's Estate.

*Practice, O. C.—Partition—Adverse possession—Sending issue to Common Pleas.*

Where an answer to a petition for partition sets up possession adverse to petitioner, and the depositions taken in behalf of the respondent make a good *prima facie* case, the proper practice is to award an issue and let the jury pass upon the facts.

Petition for partition.  O. C. Schuylkill Co.

*R. P. Swank,* for petitioner; *J. H. Garrahan,* contra.

WILHELM, P. J., July 25, 1921.—Thomas W. Williams died Aug. 22, 1889, testate, leaving a last will and testament, wherein he bequeathed to his wife, Mary Ann Williams, her heirs and assigns, all his property as long as she "will bear his name." Upon the death of Mary Ann Williams, all his property remaining was directed to be equally divided between all of the children of Thomas W. Williams and Mary Ann Williams, and Ann Williams, child of Thomas W. Williams, and Sophie Williams is given an equal share with all the other children of Thomas W. Williams and Mary Ann Williams, who are named in the will as Margaret Jane Williams, William Thomas Williams, Gwennie and Ruth Williams.

The will further provides that the property is to be in the hands of his beloved wife, Mary Ann, as long as she bears his name, and in case of her intermarrying again, she is to take a child's share.

From the death of Thomas W. Williams, Mary Ann Williams, his widow, had possession of his real estate until the date of her remarriage to Harry Lewis in the year 1894. After her marriage to Harry Lewis, she continued in possession of the real estate down to the time of her death, which occurred on Oct. 18, 1919, a period of about twenty-five years.

Ann Williams, who appears to be a child of a former marriage between Thomas W. Williams and Sophie Williams, and who by will is given an equal share with the other children of Thomas W. Williams and Mary Ann Williams, married Lincoln Millward, became the mother of two children, who died in infancy, and Ann Millward died in the year 1894, leaving to survive her her husband, Lincoln Millward, who claims to be a tenant by courtesy of the interest of his wife in this real estate.

Lincoln Millward has presented his petition, praying for a partition of the single piece of real estate possessed by Thomas W. Williams in his lifetime, and situate in the Borough of Mahanoy City, and secured a citation to issue, requiring Gwennie Jenkins to come into court and show cause why an inquest should not be awarded according to law. It appears that Gwennie Jenkins, in the year 1920, acquired the interest of Ruth Morgan, William Williams and Margaret Jones in the said real estate by virtue of a sheriff's deed, dated Oct. 26, 1920, upon an execution issued on a judgment, wherein the First National Bank of Frackville was the plaintiff and Ruth Morgan, Gwennie Jenkins, William Williams and Margaret Jones were the defendants.

No answer was filed to the citation, and on March 7, 1921, an inquest in partition was awarded, and on April 16th the inquest was held and the property was appraised at $4000.

Before the inquest was held, to wit, on April 11, 1921, Gwennie Jenkins filed her petition, praying that the inquest in partition awarded should be vacated and set aside upon the ground that the petitioner, Lincoln Millward, has neither the possession nor the right of possession of said real estate, and that she, the respondent, claims the entire title and right of possession of the

1 D. & C.

premises, and is holding the same adversely to the said Lincoln Millward and all other persons.

Testimony was taken of the answer, and it appears from the answer and the testimony that Mary Ann Williams, notwithstanding her marriage to Harry Lewis in 1894, continued in possession of the real estate, received all the rents, issues and profits accruing therefrom, occupied, used and enjoyed the premises, paying the taxes and repairs thereon without rendering any account to the petitioner or any other person, and she continued in the enjoyment of said premises down to the time of her death, which occurred in the year 1919; and it appears that the occupancy of the premises by Mary Ann Lewis, formerly Williams, was uninterrupted and exclusive during said time; that she never made any accounting to Lincoln Millward or any other person, and that Lincoln Millward never made any demand upon her for an accounting, or for any portion of the rents, issues and profits from said real estate.

Gwennie Jenkins, therefore, asserts that the possession of Mary Ann Lewis, formerly Williams, continued uninterrupted for twenty-five years without any recognition of Lincoln Millward's title, and that said uninterrupted possession, together with the receipt of the income from the real estate and the payment of taxes and repairs, are sufficient to raise a natural or legal presumption of ouster, such as would defeat the right of partition in Lincoln Millward until his title to any interest in the real estate has been passed upon by jury.

On the other hand, it is asserted that the occupancy of the widow of the real estate was not adverse to her co-tenants, because she bore the name of her husband to the time of her death; therefore, was entitled to the exclusive occupancy of the premises under the terms of the will.

It appears the widow did not live with Harry Lewis for any considerable period after her marriage, and that neighbors and friends addressed her as Mary Ann Williams, and she assumed the name of Mary Ann Williams and was known by that name generally, both in a social and business way; and from these facts it is asserted that the widow bore the name of the testator, notwithstanding her marriage to Harry Lewis; therefore, the character of her occupancy of the real estate was not changed when she remarried. This position is hardly tenable, because the testator himself, in a subsequent clause in the will, defines just what he means when he says "she bears his name," by following that expression with the words, "and in case of her intermarrying again, then she is to have but a child's share," which clearly indicates that the testator intended, upon her remarriage, that her enjoyment of the whole of his property should cease and her interest therein should be cut to a share equal to that of his children. It follows, therefore, the interest of this widow in the real estate was changed by her remarriage, and her right to enjoy the whole of the property ceased with her remarriage, and her occupancy of the whole of the property was in violation of the terms of the will, and, *prima facie*, adverse to the other parties in interest from the year 1894 to the time of her death.

It appears the court is not concluded by the respondent's claim of title by adverse possession, and it has the power to receive and look into testimony, as was done in this case, not for the purpose of determining the title of the several parties, but far enough to ascertain whether the claim of adverse and exclusive possession has any foundation in fact. The denial of tenancy in common by an heir of the decedent on the return of the writ of partition, with an assertion of title in himself by adverse possession, will not be sufficient to require suspension of the proceedings, but the court may hear evi-

Williams's Estate.

dence upon the claim asserted, and if it be sufficient to justify submission to a jury, may award an issue.

In considering the sufficiency of the acts of the respondent and her predecessors in title, covering a period of twenty-one years, it appears that they raise a legal presumption or warrant an inference of ouster, and lapse of time enters largely into the question as between tenants in common. When one tenant in common is in possession, it is *prima facie* possession of his co-tenant, when not continued for a period of twenty-one years; but when the exclusive tenancy continues for more than twenty-one years without any recognition of title in others, that possession may be sufficient to raise a legal presumption of ouster, when all the facts are submitted to a jury. Under these circumstances, it appears that the proper proceeding in this case is to award an issue and let a jury pass upon the facts.

And now, July 25, 1921, let a decree be drawn directing an issue.

From J. O. Ulrich, Tamaqua, Pa.